FILED
MAR 21 2016
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Special Agent Russell Pompa, of the United States Department of Justice, Drug Enforcement Administration, being duly sworn, depose and state the following:

### EXPERIENCE AND TRAINING

1.  I have been a Special Agent (SA) with the Drug Enforcement Administration (DEA) since July of 1989. Prior to becoming a Special Agent, I was a sworn Police Officer in the City of Fairfax, Virginia since June of 1985 and a graduate of the Northern Virginia Criminal Justice Academy. I have successfully completed extensive training emphasizing narcotics investigations and enforcement, including the 14-week DEA Academy in Quantico, Virginia. This training included instruction in the investigation of federal drug violations including Title 21 of the United States Code. I have completed training provided by the DEA involving the use, possession, distribution, packaging, manufacturing, sale, concealment, and transportation of various controlled substances, including cocaine. Since June of 1985, I have participated in numerous narcotics investigations involving the illegal manufacturing, possession, sale, distribution, and importation of a variety of controlled substances.

2.  I have made arrests of drug violators and have interviewed drug traffickers, cooperating drug defendants, and cooperating sources. Through my training and experience, I have become familiar with the methods and techniques used by drug traffickers to purchase, package, store, distribute, and sell drugs.

3.  I am familiar with the facts and circumstances of this investigation as a result of information received by me and summarized in reports I have reviewed. I have compiled information derived from discussions with experienced law enforcement officers. This affidavit contains a probable cause statement to support the issuance of an arrest warrant for this offense and does not contain all the information known

1

LRL
R.P.

to this affiant regarding the defendant. Based upon my experience and training, this affidavit is being made in support of a criminal complaint charging **Kenneth Ray MATTHEWS** with a violation of Title 21, United States Code, Sections 846 and 841, that is, conspiracy to distribute and possess with intent to distribute cocaine, a Schedule II narcotic controlled substance.

## STATEMENT OF FACTS

4.  On July 8, 2014, The Honorable Mark S. Davis, United States District Judge for the Eastern District of Virginia, Norfolk Division, entered an order authorizing DEA-Norfolk to intercept wire communications occurring over a cellular telephone then being utilized by German Ponce (Ponce) in furtherance of a conspiracy to distribute cocaine. On or about July 10, 2014, Ponce and Kenneth Ray Meeks (Meeks) engaged in a series of telephone conversations which were intercepted by law enforcement. At approximately 2:15 p.m., Ponce and Meeks spoke by telephone, during which conversation Ponce agreed to meet Meeks at Meeks' residence at 5:00 p.m. with "nine" (ounces of cocaine). At approximately 4:58 p.m., Ponce and Meeks spoke by telephone. During this conversation, Meeks advised Ponce that Meeks' father (Kenneth Ray MATTHEWS) could get Meeks "one for 45" (one kilogram of cocaine for $45,000). Ponce agreed to attempt to locate a kilogram of cocaine to sell to Meeks. Meeks informed Ponce that Meeks and his father (MATTHEWS) were leaving for North Carolina in 30 minutes (to buy cocaine) if Ponce was unable to locate one kilogram of cocaine to sell to Meeks. At approximately 5:26 p.m., Ponce and Meeks spoke again by telephone, during which conversation Ponce informed Meeks that Ponce had not found "one" (kilogram of cocaine) but he (Ponce) was still looking. In response to this series of phone conversations between Ponce and Meeks, members of the investigative team initiated physical surveillance of Kenneth Ray Meeks.

5.  On July 10, 2014, at approximately 6:29 p.m., members of the investigative team observed Meeks, operating an automobile, pull up at MATTHEWS' residence in the 100 block of Yorkshire Road in

Portsmouth, Virginia. At approximately 6:32 p.m., Meeks, MATTHEWS and S.L. departed MATTHEWS' residence together in a Nissan Murano automobile. At approximately 6:57 p.m., Suffolk Police stopped the Nissan Murano for speeding on Route 13 (Carolina Road) in Suffolk, Virginia. During the traffic stop, Suffolk Police confirmed the two male occupants of the vehicle were Kenneth Ray Meeks and Kenneth Ray MATTHEWS. After the traffic stop was concluded, members of the investigative team followed Meeks and MATTHEWS' vehicle to a Bojangles restaurant on U.S. Highway 13 in Ahoskie, North Carolina. Members of the investigative team observed Meeks enter the restaurant while MATTHEWS remained in the parking lot and met with the occupants of a vehicle displaying North Carolina tags. Shortly thereafter, Meeks and MATTHEWS departed the Bojangles and drove back to Portsmouth where they were stopped by the police at approximately 9:35 p.m. The police screened Meeks' and MATTHEWS' vehicle with a drug dog who failed to alert on the vehicle. The police allowed Meeks and MATTHEWS to depart.

6. On or about July 16, 2014, members of the investigative team arrested German Ponce on a complaint charging conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841. On March 6, 2015, Ponce pleaded guilty to a charge of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A).

7. On April 20, 2015, DEA Special Agent Russell Pompa and Task Force Officer (TFO) Dennis Hammond conducted a post guilty plea debriefing of Ponce in the presence of Ponce's attorney. Ponce provided the following information. In approximately February or March 2014, Ponce was introduced to MATTHEWS through MATTHEWS' son, Kenneth Ray Meeks, for the purpose of supplying MATTHEWS with up to kilogram quantities of cocaine. During one of their initial meetings, MATTHEWS advised Ponce that he was looking to secure a source of supply for one-half kilogram to kilogram quantities of cocaine. MATTHEWS advised Ponce that he was willing to pay between $16,000 and $17,000 for one-half kilogram of cocaine and up to $36,000 for one kilogram of cocaine. MATTHEWS told Ponce that he

3



(MATTHEWS) had a source of supply for kilogram quantities of cocaine in North Carolina who was charging MATTHEWS $35,000 to $36,000 per kilogram of cocaine. MATTHEWS informed Ponce that his (MATTHEWS') North Carolina source of supply for cocaine was currently unable to supply MATTHEWS with cocaine.

8. In approximately late March or early April 2014, Ponce agreed to supply MATTHEWS with nine ounces of cocaine. The transaction took place at Meeks' residence in Portsmouth, Virginia, where Meeks served as the Spanish-English interpreter between Ponce and MATTHEWS. During this transaction, MATTHEWS told Ponce that he (MATTHEWS) had been purchasing kilogram quantities of cocaine from his North Carolina source of supply every two weeks.

9. In approximately late April or early May 2014, Meeks contacted Ponce regarding the purchase of one-half kilogram of cocaine for MATTHEWS. Ponce informed Meeks that he (Ponce) had only four ounces of cocaine he could sell to MATTHEWS. Ponce met Meeks and MATTHEWS at Meeks' residence in Portsmouth where Ponce sold MATTHEWS four ounces of cocaine for $5,200.

10. In approximately May 2014, Meeks contacted Ponce seeking to arrange the purchase of one-half to one kilogram of cocaine by MATTHEWS. Ponce informed Meeks that he (Ponce) had only five ounces of cocaine he could sell to MATTHEWS. Ponce met Meeks and MATTHEWS at Meeks' residence in Portsmouth where Ponce sold MATTHEWS five ounces of cocaine for $6,500.

11. On July 10, 2014, Meeks contacted Ponce regarding the purchase of a kilogram of cocaine for MATTHEWS. Ponce advised that he attempted to locate a kilogram of cocaine for MATTHEWS but was unsuccessful.

12. On or about August 4, 2015, The Honorable Douglas E. Miller, United States Magistrate Judge for the Eastern District of Virginia, Norfolk Division, issued search warrants for MATTHEWS' residence in the 100 block of Yorkshire Road in Portsmouth, Virginia; Meeks' residence in the 600 block of Normandy Street in Portsmouth, Virginia, and Meeks' 2004 Dodge pick-up truck. The Honorable Judge

Miller also issued an arrest warrant upon a criminal complaint charging Meeks with possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

13. On August 13, 2015, Kenneth Ray Meeks was arrested by Special Agents with the Norfolk Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) as part of a joint investigation with the DEA Norfolk Resident Office. ATF Special Agent John Hansen advised Meeks of his *Miranda* rights. TFO Dennis Hammond (Hammond) asked Meeks if he recalled being stopped by the police on July 10, 2014. Meeks told Hammond he remembered the July 10, 2014 incident. Meeks admitted that MATTHEWS had received one kilogram of cocaine from his North Carolina supplier on that occasion. During the traffic stop in Portsmouth on July 10, 2014, Meeks indicated, there was a kilogram of cocaine hidden under the rear seat of Meeks' and MATTHEWS' vehicle. The kilogram of cocaine was packed in grease. Meeks told Hammond that he believed the presence of the grease inhibited the drug dog's ability to detect the odor of the cocaine. Following the traffic stop, MATTHEWS told Meeks that the police were listening to Ponce's telephone. MATTHEWS directed Meeks to have no further contact with Ponce. Hammond asked Meeks how much cocaine he purchased from Ponce and how much Meeks paid. Meeks said MATTHEWS paid Ponce $41,000 for each kilogram of cocaine. Meeks stated that Ponce was an alternate source of supply for kilogram quantities of cocaine for Meeks and MATTHEWS. Meeks estimated that collectively he and MATTHEWS were purchasing a kilogram of cocaine once a month from Ponce. Meeks advised that in the beginning, Ponce charged Meeks and MATTHEWS $41,000 per kilogram of cocaine, but later increased his price to $44,000 per kilogram. Meeks estimated that he and MATTHEWS utilized Ponce as their source of supply for kilogram quantities of cocaine for approximately six months before MATTHEWS went back to purchasing kilogram quantities of cocaine from his North Carolina source of supply.

14. Also on August 13, 2015, agents with Norfolk DEA and ATF, along with Virginia State Police personnel, executed the search warrant at MATTHEWS' residence in Portsmouth, Virginia. Pursuant to the execution of the warrant, approximately 17 grams of cocaine were discovered in the pocket

of a man's coat found in a closet in the master bedroom, two digital gram scales were located in a dresser in the master bedroom and a total of approximately $30,120 in cash was seized from a dresser and a combination safe in the master bedroom. Also seized from MATTHEWS' residence were approximately thirteen rifles, twelve shotguns and ten handguns all of which were located in a gun safe in the converted attached garage of the residence.

15. On January 21, 2016, Kenneth Ray Meeks pleaded guilty to a criminal information charging conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B), and felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On February 24, 2016, a post guilty plea debriefing was conducted with Meeks in the presence of his attorney. Meeks stated that he had been aware of MATTHEWS' involvement in the distribution of cocaine for a number of years. Meeks advised that at an early age he became aware that MATTHEWS had served a federal prison sentence relating to the distribution of narcotics in the early 1990's. Meeks characterized his relationship with MATTHEWS as not your typical father and son relationship. MATTHEWS, according to Meeks, was never a father figure to Meeks but more of a close friend. As a result, MATTHEWS often shared stories of his experiences as a self-admitted cocaine distributor with Meeks. Meeks provided the following information.

16. In early November 2013, MATTHEWS complained to Meeks about the high prices MATTHEWS' source of supply in North Carolina was charging for a kilogram of cocaine. MATTHEWS subsequently inquired if Meeks knew of anyone locally who could supply MATTHEWS with multi-ounce quantities of cocaine for less than $1,600 an ounce. Meeks recommended that MATTHEWS utilize J.M., who Meeks knew to distribute ounce quantities of cocaine for $1,300. At this time, Meeks and MATTHEWS agreed to consolidate their funds and arranged the purchase of approximately five to six ounces of cocaine from J.M. Meeks identified this as the first time he and MATTHEWS ever purchased cocaine together.

17. In late December 2013 or early January 2014, Meeks was introduced to Ponce through a mutual friend as a source of supply for cocaine. At this time, Ponce agreed to supply Meeks and MATTHEWS with multi-ounce to kilogram quantities of cocaine for $1,250 an ounce.

18. Approximately one week after Meeks' initial meeting with Ponce, Meeks and MATTHEWS agreed to purchase nine ounces of cocaine from Ponce. This transaction took place at Meeks' residence in Portsmouth, Virginia.

19. Meeks advised that he and MATTHEWS purchased an average of nine ounces of cocaine per week from Ponce between January and July 2014. MATTHEWS cut (mixed) his cocaine with the nutritional supplement Creatine to increase the total volume of cocaine for distribution. MATTHEWS also utilized a kilogram press to recompress the cocaine after he cut it with Creatine. Meeks advised that MATTHEWS had been involved with the North Carolina source of supply since approximately 1994 and that MATTHEWS had introduced the North Carolina source of supply to the narcotics trafficking business.

20. Based on the above facts, I believe probable cause exists to charge Kenneth Ray MATTHEWS with a violation of 21 U.S.C. §§ 846 and 841(a)(1), that is, conspiracy to distribute and possess with intent to distribute cocaine, a Schedule II narcotic controlled substance.

Special Agent Russell Pompa
Drug Enforcement Administration

Sworn and subscribed to before me this 21 day of March 2016.

UNITED STATES MAGISTRATE JUDGE