

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**KENNETH RAY MATTHEWS,**

        Petitioner,

v.                                        CRIMINAL NO. 2:16-cr-61

**UNITED STATES OF AMERICA,**

        Respondent.

*MEMORANDUM OPINION & ORDER*

Before the Court is Kenneth Ray Matthews's ("Petitioner") Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Pet'r's Mot. Compass. Release, ECF No. 142 ("Pet'r's Mot."). Petitioner originally filed a pro se letter motion that the Government opposed. Pet'r's Pro Se Mot. Compass. Release, ECF No. 126 ("Pro Se Mot."); Gov't's Mem. Opp'n to Pet'r's Pro Se Mot. Compass. Release, ECF No. 134 ("Mem. Opp'n"). Petitioner then filed the instant Motion through counsel. Pet'r's Mot. This matter is now ripe for judicial determination. For the reasons set forth below, Petitioner's Motion is **DENIED**.

        **I.**      **FACTUAL AND PROCEDURAL HISTORY**

On April 20, 2016, Petitioner was named in a four-count Indictment, charging him with: Conspiracy to Distribute and Possess with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 846 (Count One); Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count Two); and Transfer of a Firearm to a Felon, in violation of 18 U.S.C. §§ 922(d) and 924(a)(2) (Counts Three and Four). Indictment, ECF No. 11. On September 27, 2016, Petitioner went to trial by jury. On September 29, 2016, the jury found Petitioner guilty on Counts One, Two, and Four, and not guilty on Count Three. Jury Verdict, ECF No. 52.

According to his Presentence Investigation Report, Petitioner participated in a conspiracy to distribute and possess with intent to distribute cocaine from 2013 until his arrest in 2015. Presentence Invest. Rep. ¶¶ 7-19, ECF No. 131 ("PSR"). On May 31, 2015, Petitioner supplied someone he knew to be a convicted felon with two rifles. *Id.* at ¶ 16. On August 13, 2015, agents executed a search warrant at Petitioner's residence, from which they recovered 34 firearms, 3,882 rounds of assorted ammunition, Schedule III controlled substances, 17 grams of cocaine, and $30,120 of United States currency. *Id.* at ¶ 17. In total, Petitioner was attributed with 13.5684 kilograms of cocaine and 5.2 grams of Schedule III controlled substances. *Id.* at ¶ 19.

The PSR documented Petitioner's long history of back problems stemming from suffering from a broken back in 2005. *Id.* at ¶ 77. Petitioner has had several back surgeries from repeated reinjuries every few years. *Id.* Medical records revealed that Petitioner suffered from a herniated disc, stenosis, and a congenitally narrow spinal canal, which made his condition worse. *Id.* At the time the PSR was completed, Petitioner reported that he was constantly in pain and that sometimes his left leg would give out. *Id.* According to a presentence report from 1995, Petitioner reportedly suffered a gunshot wound in the past as well. *Id.* at ¶ 78.

The PSR assessed Petitioner with a total offense level of 32, a criminal history category of I, and a recommended Guidelines range of 121 to 151 months' imprisonment. *Id.* at ¶¶ 96-97. On January 23, 2017, this Court sentenced Petitioner to 144 months' (12 years) imprisonment followed by five (5) years of supervised release. J., ECF No. 65. Petitioner is currently incarcerated at FCI Petersburg Low with a projected release date of March 20, 2027.[1] As of the date of this opinion, Petitioner will be released in approximately 56 months and has served approximately half of his sentence.[2]

---

[1] *Find an Inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited July 7, 2022).
[2] *Id.*

2

On April 3, 2021, Petitioner submitted a Request for Compassionate Release/Reduction in Sentence to the Warden of his Bureau of Prisons (BOP) facility and, on April 12, 2021, the Warden denied his request. Pet'r's Mot. at Ex. 1. Accordingly, on May 27, 2021, Petitioner filed a pro se motion for compassionate release. Pro Se Mot. On July 22, 2021, Petitioner filed a letter motion requesting appointment of counsel. Letter Mot. Appoint. Counsel, ECF No. 133. On July 23, 2021, the Government responded in opposition. Mem. Opp'n. On July 27, 2021, the Court ordered the appointment of counsel, that counsel file a supplemental motion, and that the United States Probation Office file its position. Order to Appoint Counsel & Respond, ECF No. 135. On September 30, 2021, Petitioner filed the instant Motion through counsel. Pet'r's Mot. On October 15, 2021, the U.S. Probation Office filed its position. U.S.P.O. Compass. Release Rec., ECF No. 144. On November 1, 2021, Petitioner filed a response to the Probation Office's position. Rebuttal to U.S.P.O. Compass. Release Rec., ECF No. 145.

At age 49, Petitioner alleges that he suffers from obesity, chronic arthritis, potentially cancerous spots on his lungs, a prior punctured lung, a chronic diminished mental capacity and learning disability from infancy, and chronic back pain, which puts him at high risk for severe illness or death if he contracts COVID-19. Pet'r's Mot. at 5-6. He also alleges that he has lingering heart and lung issues as a result of contracting COVID-19 while incarcerated. *Id.* Together with the 18 U.S.C. § 3553(a) factors, Petitioner alleges these circumstances constitute extraordinary and compelling reasons that warrant his compassionate release and requests the Court grant him the same. *See id.*

## II. LEGAL STANDARD

### A. The Threshold Requirement

A petitioner may bring a motion to modify their sentence after they have "fully exhausted

3

all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [petitioner]'s behalf or the lapse of 30 days from the receipt of such a request by the warden of the [petitioner]'s facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release has two options after requesting that the BOP bring a motion on their behalf: (1) exhaust their administrative remedies; or (2) wait 30 days from the date of their initial request to the BOP. *United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) ("§ 3582(c)(1)(A) outlines two routes – one of which does not require exhaustion of administrative remedies."). In other words, a petitioner may satisfy the threshold requirement if they "request[] the Bureau of Prisons to bring a motion on their behalf and *either* fully exhaust[] all administrative rights to appeal the Bureau's decision *or* wait[] 30 days from the date of their initial request to file a motion in the district court." *Id.* (emphasis in original). Thus, a petitioner who made a request to the BOP at least 30 days prior may seek compassionate release with the district court whether the BOP has ruled on the request or not. *Id.* (holding petitioner satisfied the threshold requirement by filing his compassionate release motion 149 days after submitting a request to the warden, which the warden denied) (citing *United States v. Garrett*, 15 F.4th 335, 338 (5th Cir. 2021); *United States v. Harris*, 973 F.3d 170, 171 (3rd Cir. 2020); and *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020)). Moreover, the threshold requirement is a non-jurisdictional claim-processing rule, and thus may be waived or forfeited if not timely raised. *Id.* at 129-30 (collecting cases from sister circuits holding the same).

### B. The Compassionate Release Standard

As amended by the FIRST STEP Act, a court may modify a term of imprisonment by motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

4

"Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. §1B1.13, Application Note 1. Before the FIRST STEP Act was passed, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. §1B1.13, cmt. 1(A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at cmt. 1(D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

U.S.S.G. §1B1.13 is now outdated, however, following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, §1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020); *see also United States v. Lisi*, 440 F. Supp. 3d 246, 250 (S.D.N.Y. 2020), *reconsideration denied*, No. 15 CR. 457 (KPF), 2020 WL 1331955 (S.D.N.Y. Mar. 23, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release . . . [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive."). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may

consider a combination of factors, including but not limited to those listed in U.S.S.G. §1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i). Ultimately, compassionate release motions "ask courts to balance the severity of the inmate's personal circumstances, on the one hand, against the needs for incarceration, on the other." *United States v. Hargrove*, 30 F.4th 189, 197 (4th Cir. 2022).

### III. DISCUSSION

#### A. The Threshold Requirement

The Court finds that Petitioner satisfied the threshold requirement because he submitted a Request for Compassionate Release to the Warden of his BOP facility, which was denied, and he filed a Motion for Compassionate Release with the Court more than 30 days thereafter. Pet'r's Mot. at Ex. 1. The Government does not contest such. Mem. Opp'n at 2-3.

#### B. Petitioner's Compassionate Release Request

The Court now turns to whether Petitioner has set forth extraordinary and compelling reasons to modify his sentence because of the grave risk COVID-19 poses to individuals with underlying health conditions. During the COVID-19 pandemic, courts have found extraordinary and compelling reasons "when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (collecting cases). "Notably, the *fear* of contracting a communicable disease proves insufficient to justify a sentence modification." *Id.* (emphasis in original) (internal quotations omitted).

First, Petitioner does not show a particularized susceptibility to serious health risks from COVID-19. At 49 years old, Petitioner argues that his obesity, chronic arthritis, potentially cancerous spots on his lungs, prior punctured lung, chronic diminished mental capacity and

learning disability, and chronic back pain put him at high risk for severe illness or death if he contracts COVID-19. Pet'r's Mot. at 5-6. At the time of sentencing, the only pre-existing physical conditions known to the Court were his chronic back pain and that he had suffered a gunshot wound prior to 1995. *See* PSR at ¶¶ 77-78. In January 2021, Petitioner contracted COVID-19 while he was incarcerated at FCI Schuylkill. Med. Rs. 72, ECF No. 143. He alleges that he has lingering heart and lung issues as a result, but provides no supporting documentation of such. Pet'r's Mot. at 5-6. Specifically, Petitioner claims that he has spots on his lungs and continues to have trouble breathing. *Id.* at 6. However, his medical records reveal that Petitioner was asymptomatic when he tested positive for COVID-19 and there is no evidence that he ever developed any symptoms. Med. Rs. at 7. Petitioner also admits that the potentially cancerous spots on his lungs are not from contracting COVID-19, but rather likely from his previous employment at a shipyard where he was routinely exposed to asbestos, fiberglass, paint, and other carcinogens. Pet'r's Mot. at 6. Petitioner therefore had these underlying conditions, which made it more likely that he would face serious health risks,[3] when he contracted COVID-19 in January 2021, yet did not suffer any documented symptoms or lasting side effects. He also did so without the benefit of the vaccine. Med. Rs. at 66. Since nothing has changed in Petitioner's physical health from the first time he contracted COVID-19, the Court finds that Petitioner has not demonstrated that he is particularly susceptible to serious illness or death should he contract the virus again. *See United States v. Nabaya*, No. 3:17CR3, 2021 WL 54361, at *5 (E.D. Va. Jan. 6, 2021) ("Considering that Nabaya has already recovered from COVID-19, his asserted health conditions, without more, do not persuade this Court to grant compassionate release.").

Second, Petitioner does not show a particularized risk of contracting the disease at his

---

[3] *See COVID-19: People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 2, 2022).

prison facility. The Court recognizes and in no way minimizes the harsh realities that incarcerated individuals have faced during the pandemic. Despite the BOP's protection measures, individuals housed in prisons remain particularly vulnerable to infection. *See Muniz*, 2020 WL 1540325, at *1; *see also Esparza*, 2020 WL1696084, at *1 (noting that "[e]ven in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others"). Therefore, the Court need not wait until an outbreak occurs at a specific prison facility to determine that a petitioner has a particularized risk of contracting the disease. *See Zukerman*, 2020 WL 1659880, at *6 (*citing Rodriguez*, 2020 WL 1627331, at * 12) ("[T]he Court did not intend for that sentence to include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic.").

Yet, Petitioner has not shown that these harsher conditions of confinement are unique to him, or "extraordinary," for purposes of compassionate release. *See United States v. Ramirez*, No. 98 CR 927 (CM), 2021 WL 5233512, at *5 (S.D.N.Y. Nov. 10, 2021). Indeed, "[i]f challenging the conditions of confinement caused by the pandemic warranted a sentence reduction here, essentially every inmate who has been in BOP custody at any time since March 2020 would be entitled to a sentence reduction." *Id.* The Court also bears in mind that "the COVID-19 pandemic continues to evolve, seemingly improving but surely changing." *United States v. Kibble*, 992 F.3d 326, 336 (4th Cir.), *cert. denied*, 142 S. Ct. 383, 211 L. Ed. 2d 204 (2021) (Quattlebaum, J., concurring). As of July 7, 2022, the BOP has reported a total of 191 recovered positive cases of COVID-19 for inmates (3 current, 0 deaths) and 68 recovered cases for staff (1 current) at FCI Petersburg Low.[4] Although Petitioner's facility is currently operating

---

[4] *See COVID-19 Coronavirus: COVID-19 Cases*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited July 7, 2022) (numbers for Petersburg Low FCI).

at Modified Operational Level 3, meaning it is operating with intense modifications for COVID-19, the BOP also reports that the majority of facilities are currently operating at Level 3.[5] This also coincides with current nationwide trends in COVID-19 cases.[6] While Petitioner extensively challenges the conditions of confinement during the pandemic *generally*, his only argument with regard to his facility, *in particular*, is that "all visitation has been suspended due to virus and infection concerns." Pet'r's Mot. at 17. Since most BOP facilities have done so, Petitioner has failed to demonstrate a particularized risk of contracting COVID-19 at his facility. *Feiling*, 453 F. Supp. 3d at 841.

Moreover, Petitioner's claim that he is particularly susceptible to contracting COVID-19 as an individual and at his facility is undercut by his repeated refusal to get vaccinated. Med. Rs. at 66. On February 9, 2021, about a month after he contracted COVID-19, Petitioner refused a dose of the Pfizer vaccine. *Id.* On June 22, 2021, Petitioner refused a dose of the Johnson & Johnson vaccine. *Id.* According to the CDC, the COVID-19 vaccine is "effective at preventing COVID-19 as seen in clinical trial settings."[7] Although individuals who are vaccinated may still contract COVID-19, they are significantly less likely to experience severe symptoms or be hospitalized as compared to unvaccinated individuals.[8] The Court recognizes that it is Petitioner's right to refuse the vaccine. At the same time, the Court finds that his concern for the impacts he may face if he contracts the virus again and his simultaneous refusal to protect himself to undermine his position that extraordinary and compelling reasons, stemming solely

---

[5] *Compare FCI Petersburg Low*, FED. BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/pet/ (last visited July 7, 2022) (indicating Level 3 Operations), *with COVID-19 Coronavirus: Modified Operational Levels*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited July 7, 2022) (59 Level 3 facilities, 33 Level 2 facilities, and 5 Level 1 facilities).

[6] *See COVID Data Tracker: Trends in Number of COVID-19 Cases and Deaths in the US Reported to the CDC, by State/Territory*, CENTERS FOR DISEASE CONTROL & PREVENTION, https://covid.cdc.gov/covid-data-tracker/#trends_dailycases (last visited July 7, 2022).

[7] *See Ensuring COVID-19 Vaccines Work: Vaccine Effectiveness*, CENTERS FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness.html.

[8] *Id.*

9

from the pandemic, warrant his release. *See United States v. Vaughn*, No. 4:19CR21 (RCY), 2021 WL 5139502, at *4 (E.D. Va. Nov. 3, 2021) ("Although Vaughn has the right to decline vaccination, he cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk.") (internal quotations omitted); *see also United States v. Siegel*, No. CR TDC-03-0393, 2021 WL 962491, at *2 (D. Md. Mar. 15, 2021), *aff'd*, No. 21-6426, 2022 WL 612357 (4th Cir. Mar. 2, 2022) (denying compassionate release "[w]here the health risks are likely declining because [the BOP] is now vaccinating inmates, and where [petitioner] has refused to accept vaccination, [which is] a more direct means of protecting herself from COVID-19 than full release from prison").

Third, overall, the § 3553(a) factors do not weigh in favor of Petitioner's compassionate release. The seriousness of Petitioner's conduct for his underlying offense remain unchanged. According to his PSR, Petitioner participated in a drug conspiracy from 2013 to 2015 in which he purchased cocaine from at least two distributors, one of which was located out of state. PSR at ¶¶ 8-10. Petitioner started out purchasing smaller amounts of cocaine and then began to purchase greater quantities over time with the intent to resell them for profit. *Id.* at ¶¶ 9-10, 12, 14. In conspiring with others to do so, Petitioner operated primarily out of his family home. *Id.* at ¶¶ 16-17. Petitioner also transferred firearms to a known convicted felon and regularly possessed firearms while engaging in drug transactions. *Id.* at ¶¶ 11, 16. Law enforcement agents recovered 34 firearms and 3,882 rounds of assorted ammunition from Petitioner's house. *Id.* at ¶ 17. In sum, Petitioner was attributed with 13.5684 kilograms of cocaine and 5.2 grams of Schedule III controlled substances. *Id.* at ¶ 19.

Prior to the instant offense, Petitioner also received multiple convictions for assault and battery, resisting arrest, failure to appear, disorderly conduct, and driving infractions. *Id.* at ¶¶

10


49-58. As the Government notes, it is concerning that Petitioner's crimes have become increasingly serious over time. Mem. Opp'n at 19. This trend cuts against Petitioner's argument that he is less likely to recidivate. Pet'r's Mot. at 28. Furthermore, as previously noted, Petitioner has only served about 50% of his 144-month sentence.[9] Accordingly, early release would not provide adequate deterrence or punishment for his offense. *See United States v. Hill*, No. 3:14cr114, 2020 WL 6049912, at *5 (E.D. Va. Oct. 13, 2020) (denying compassionate release where the defendant had "served only 40% of his 188 month sentence, which may not afford adequate deterrence to his criminal conduct"). Moreover, Petitioner's release plan does not provide the Court with much confidence that he is unlikely to recidivate because he plans to return to the home where he committed the underlying offense. *See* Pet'r's Mot. at 25.

To his credit, Petitioner appears to have maintained a strong support system while incarcerated. Pet'r's Mot. at 26-31. He has not incurred a single disciplinary infraction and has also moved to a custody level at the minimum-security level camp. *Id.* at 28. Petitioner has also sought out mental health treatment, taken general education classes, and gained vocational training in several areas. Pro Se Mot. at 5. However, as noted by sister courts, a "defendant's rehabilitation alone proves insufficient to warrant a sentence reduction." *See United States v. Woolridge*, No. 3:09CR156 (DJN), 2021 WL 415131, at *7 (E.D. Va. Feb. 5, 2021); *see also United States v. Ahmad*, No. 1:11-cr-554-TSE, ECF No. 75 (E.D. Va. Apr. 8, 2021) (finding that the defendant's coursework did not support compassionate release, reasoning that "[i]t is not uncommon for a defendant to take educational classes to pass the time in prison").

Overall, the Court finds that the § 3553(a) factors do not weigh in Petitioner's favor and his release would not promote the respect for law or provide adequate deterrence. Critically, Petitioner did not show extraordinary or compelling reasons for release due to COVID-19.

---

[9] *See supra* note 1.

Therefore, Petitioner does not qualify for compassionate release.

## IV. CONCLUSION

For the foregoing reasons, Petitioner has not shown an extraordinary and compelling reason to grant compassionate release. Thus, Petitioner's Motion for Compassionate Release, ECF No. 142, is **DENIED**. Furthermore, Petitioner's pro se Motion for Compassionate Release, ECF No. 126, is **MOOT**.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED.**

Norfolk, Virginia
July /( , 2022

UNITED STATES DISTRICT JUDGE